Well, we come to the last day of what has been a very enjoyable oral argument sitting for this panel, and we have two cases to hear today. And we'll call the first one, number 21-11143, United States of America v. Gomez-Santacruz. And we have Mr. Brown. Good morning. Good morning, Your Honor, and may it please the Court. The District Court's 3553A analysis was clear and consistent, but ultimately capricious. The best evidence for all three points can be found at Record Site page 122. There, the District Court addressed the advisory range, 15 to 21 months, but explained that a 99-month upward variance was necessary to protect the community and to reflect the seriousness of this crime. As to seriousness, the District Court pointed to a prior conviction for misdemeanor sexual battery, which it had a few moments earlier equated to felony rape. It then justified the massive upward variance with a reference to that conviction. This is not a man, the District Court explained, who is running back over the border to roof our house. This is not a man who is running back over the border to do lawn work. This is somebody who's a bad guy who has been convicted of sexual battery. So look, if I were in your position, I would emphasize those comments, too. I, you know, make what you will of them. Maybe not the finest moment for the District Judge in saying that. However, your brief emphasizes, I think understandably, when the District Court refers to this crime as rape instead of sexual battery. I get that. However, as I read the transcript, the District Court misspeaks and then recognizes that she had sexual battery still. What I hear her saying is look at the facts of the crime, which disturbing, the facts of the crime. So what's your response to the District Court corrected herself and is really looking at the factual basis of the crime in Georgia? Certainly, Your Honor. Let's start with the District Court's reference to the facts. I think context reveals that the District Court is not referring to the larger criminal episode. It was, in fact, referring to arguments it had previously rejected concerning the existence of a relationship between Mr. Gomez Santa Cruz and the victim in this case. And we know that because immediately after stating that whether it was rape or sexual battery does not change my assessment of it, in the very next breath, she returns to that point. She explains that in light of the defendant's guilty plea and the information in the police report that she finds the idea that he had a relationship with her, which perhaps could be a mitigating fact, implausible, and she rejects it. She does it again on the very next page, 121. Is that really a good argument, though, in today that, well, it should be mitigated because he knew the victim? Oh, I'm not saying that. I'm saying it doesn't in any way imply consent, and there's nothing else in the record to say that this was a misunderstanding between two people, between the defendant and the victim, whether he knew her or had a relationship with her or not. The record is what the document said that the judge was looking at. That's a fair point, Your Honor. And I'm not arguing that it was a good or bad argument. I'm just trying to point the District Court's equation of the two in context in light of Judge Duncan's question. Now, with regard to the false equivalency, though, this is where we run into problems with 3553A2A. Now, had Mr. Gomez, in fact, committed a rape, the District Court, or that fact should have affected the District Court's 3553A2A analysis, but the District Court told us specifically that it did not. It said whether it's a sexual battery or a rape does not change my assessment of it. And on any rational reading of 3553A2A, the aggravating facts inherent to the crime of rape, both force and penetration, should affect that analysis. The District Court said they did not, and that claim fails on its own terms. If we, and I understand what you're saying. The transcript reflects what it reflects. If we, let's hypothetical. Remove the references to rape in the transcript and say, all right, I'm just looking at this sexual battery. I'm looking at the underlying facts, which is he snuck in a woman's apartment in the middle of the night and ended up in bed with her, touched her sexually against her will. Does the District Court abuse its discretion by upwardly varying under that circumstance? Had the District Court not mischaracterized the offense as rape twice and then referred to it as a violent felony, I would have a much tougher argument on appeal. Okay. Well, thank you for being candid. Well, absolutely, Your Honor. The fact of the matter is I may still be able to make an argument about abuse of discretion because it may be the fact that her emphasis on that conviction or the facts underlying the conviction, the larger episode, would become a tail that wags the 3553A dog. I think I might still have an argument there. I do think that argument would be weaker.  Yes, Your Honor, the Georgia sentencing scheme allows the District Court to impose a sentence and then probate a portion of it. Okay. So he got a 20-year sentence but only a four-year term in prison. I get it. Okay. And then he did not end up serving probation because he was immediately deported upon release. Okay. Thank you. Now, with regard to that four-year sentence, that also became another tail that wagged the dog with regard to deterrence and incapacitation. Now, the District Court reduced its entire analysis with regard to deterrence and incapacitation to the specific length of that prior term of imprisonment and its failure to deter the instant offense. That conclusion is impossible to square with the text of 3553A, guidance from the Sentencing Commission, and the available evidence. Now, the textual point is relatively straightforward. 3553A mandates a holistic evaluation of the offense and the offender. But by rejecting out of hand anything less than four years, the District Court elevated deterrence and incapacitation to supreme importance and, at least with regard to those two points, ruled out consideration of any other real-world facts or any other 3553A factors. Where are you looking – where do you infer in the transcript that the District Court did what you said – what you just said she did? She did so repeatedly, Your Honor. The first time comes on Record Site 114. She says, I'm going to vary upward based on everything I've heard today. The four years in prison didn't defer to the defendant at all. She then builds upon that point on 118, where she says he was sentenced to four years in prison for that offense, didn't serve all four. She then begins to tie that finding or that conclusion, that record fact, to her 3553A analysis explicitly. On page 118, she says, and if four years did not deter him at all, and it didn't, that tells me the court – that tells the court that he needs a little more time. I'm paraphrasing. It's a longer quotation, but that's the idea. On 118 again, she says, in a prison sentence of four years, obviously did not deter the defendant from committing crimes again and illegally reentering. And then in response to objections, she makes this point crystal clear at Record Site 122, where she says, and I'll tell you the measure that I came by, that I think of, there is in deciding what's necessary, but not more than necessary. If four years didn't knock some sense into him, and he's back less than a year after that, then the court thinks in order to deter and protect the community, that more than four years is required. And when we're talking about clear areas of judgment, the analysis is always going to be necessarily subtle. That's why I think it's helpful to analogize to Hoffman, which is one of this Court's few opinions, published opinions dealing with a reversal. That was the movie credits? That was the tax credits for movies case? That's exactly right, Your Honor. It was a tax credit for movies case. The guidelines recommended a sentence somewhere between 14 and 17 and a half years, and the district court imposed a massive downward variance, went all the way down to five years of probation. Now, the district court, what this court did on appeal to judge the government's claims about the reasonableness of that sentence was to compare the district court's sentencing explanation with undisputed facts about the offense and the offender, and then the entire sentencing landscape, which included 3553A, the sentencing guideline, and the congressional sentencing policy, sentencing policy as set by the Sentencing Commission. And the district, pardon me, this Court found, or the panel majority found, that the district court had allowed its concerns about deterrence, its concerns about actual loss, to overwhelm other factors that should have received some consideration, but that had received none. What was the, do you recall, what was the downward variance in that case? The defendant received a downward variance to five-year term of probation. So it's a 100 percent downward variance. I see. And this Court . . . It was Judge Costa's opinion, right? It was, yes, Your Honor, Judge Costa's opinion. Yesterday was his last day on our Court, so we will miss him. I will, too, Your Honor. I will, too. But I think that the errors that this Court recognized in Hoffman can be very easily analogized to the errors the district court committed below. And since we're talking about deterrence and incapacitation, I'll start there. So in Hoffman, we have a situation where the district court determines that a five-year term of probation would be sufficient to deter additional crime by this defendant. But the record refuted that point directly. This defendant had previously received a term of probation for a federal economic crime, and that had not deterred him from committing a much more serious fraudulent scheme a few years down the road. On top of that, Your Honors, the district court's decision, or that assessment by the district court, cannot be squared with either congressional sentencing policy designed to ensure identical standards of justice for both rich and poor defendants, or a sentencing policy as codified by the Sentencing Commission in carrying out 3553A's goals. And I think you have a similar error here with regard to deterrence because the district court's emphasis on that four-year term imprisonment and its failure to deter the instant offense led it to throw the Guidelines Manual out the window entirely. So the guy— To be clear, though, you've twice used the term the tail wagging the dog, so that I understand your argument. Are you saying that the district judge did not adequately consider all of the 3553A factors, or that she did, but she didn't properly weigh because she was blinded or so tremendously influenced by one event? It's the latter, Your Honor. She purportedly considered everything, but her emphasis on two factors led her to an unreasonable balancing of the entire factual— But you agree that she satisfied the command that she must consult the 3553A factors before entertaining any deviation from the guidelines? I think she did, Your Honor, but I think she also violated 3553A in some more subtle ways. So 3553A, for example, requires the district court to take a holistic approach to consider everything here. She put so much emphasis on a few different factors that the others effectively served no purpose in her sentencing analysis. And then on top of that, Your Honor, 3553A says the district court is required to consider the guideline range, but we know from what the district court said that the guideline range was never an option in this case. She told us repeatedly that she could not impose less than four years because she treated the prior sentence as a hard limit on her discretion. Now, that prior sentence and the fact of recidivism are relevant to the 3553A analysis, but they can't be used in that blunt way as a hard limit on one's discretion. Well, I understand what you're saying, but just so I understand, when a district judge is considering these factors and is considering deterrence, can a district judge say, look, you committed this crime in the state system, you served your time, and then you were out, you immediately, within a year, you commit another, you commit a federal crime? A district judge can take that into consideration in upwardly varying, right? Yes, Your Honor. I think that's a brocade. It can serve as a brocade. All right. You're just saying that she focused on this so overwhelmingly that it's an abuse of discretion. Well, exactly, Your Honor. She uses a hard limit on her discretion, which I think is inappropriate. And it also led her to make some claims that are irreconcilable with the record. So, for instance, we know that Mr. Gomez reentered the United States at some point in 2015. We also know that he did not run afoul of the law again until September 20, 2020, when he was arrested for aggravated assault. Now, the district court ultimately disclaimed reliance on that arrest and the facts underlying it in her 3553 calculus. So that's off the table. But she nevertheless repeatedly claimed that he, that this was an unrepentant recidivist who was running back over the border to commit more crimes. That makes sense in light of the deterrence and incapacitation analysis that she reached, albeit unreasonable. It does not make sense in light of the record that was compiled below. Do you agree that the district judge was required to sort of discount reliance on the aggravated arrest, aggravated assault arrest? Oh, it was not required to do so. In fact, I was surprised. She could have considered it, but she just disclaimed it. Yes, Your Honor. She said that it did not factor into. Initially, she said it factored in a little to her 3553 analysis. And in response to objections about whether or not the claim was reliable, she just threw out the window entirely. And I believe that's on page 121 of the record. Okay. Yeah, that's right. So at this point, Your Honor, I'd like to circle back to the seriousness of the claim. Just briefly, to respond to a point the government makes in their briefs, the government argues essentially that the district court was more concerned about the larger criminal episode and the specifics of Mr. Gomez's larger criminal immigration history. But you'll notice throughout pages 114 to 122 when the district court is explaining its decision to vary and then justifying the particular variance, it repeatedly returns to the sexual battery conviction, and it repeatedly does so even after it's been corrected that it was not a rape, it was not a violent felony. And I think those subsequent references cannot erase the district court's errors because they come after the district court has already staked out this unreasonable position. Okay. Thank you. Thank you. You will have rebuttal time, Mr. Brown. Mr. Briggs. Good morning. Good morning. May it please the court, Andrew Briggs on behalf of the United States. This court should affirm Mr. Gomez's sentence because the district court performed a thorough, thoughtful, fact-based analysis of the 3553A factors in varying in the way that it did. The district court had at its fingertips, as it described it, the horrifying facts and was well within its discretion to afford significant weight to that criminal episode. Mr. Gomez attempts to take the district court's words out of context, both in terms of those inartful and unfortunate statements at the end of the record that the district court made and also the description of the rape compared to the sexual battery in an attempt to ascribe error where there is none. Mr. Gomez has failed to show that the district court did not account for some factor that it should have. He's failed to show that the district court provided significant weight to an improper or irrelevant factor. And finally, he's failed to show that the district court made a clear error in judgment in balancing the sentencing factors. The court was within its discretion when it sentenced Mr. Gomez the way that it did, and the government would ask that you affirm the sentence. First, I want to turn to what Your Honors were speaking with Mr. Brown about, which is the misinterpretation of the sexual battery or the alleged misinterpretation of it. What's clear from the record is that although the district court referred to it as rape, that is true, the district court was more concerned with the facts, and the district court had those facts. This wasn't a barebone pre-sentence report or a barebone arrest record or a line in a probation pre-sentence report. Instead, the district court had a portion of that police report offered by Mr. Gomez himself. It was offered as an exhibit at sentencing by Mr. Gomez, and the district court was well within its discretion to afford significant weight to that. I want to turn to the specific language that- Remind me, did the report mention his claim that he was in a relationship with the woman who sexually battered? It did not, Your Honor. In fact, that was an argument made by Mr. Gomez at sentencing to somehow sort of distance himself or minimize the conduct there. The district court found that not credible and instead said there was no evidence presented to support that. Instead, it was just argument. When Mr. Gomez objected to the district court's reference to the sexual battery as rape, the district court said, quote, whether it was rape or sexual battery does not change my assessment of it when looking at the facts. That is a critical point in the record. That's at record site, page 120. That is critical because if this were instead sort of a barebone arrest record or a one line in a pre-sentence report, we may be having a different conversation today. But the court was within its discretion because it had at its fingertips what it described as those horrifying facts. Second, the court not only didn't misinterpret that conviction or the larger criminal episode, but it also didn't overemphasize it unduly or unreasonably. The court was well within its discretion to afford significant weight to that. And I want to address a point that Mr. Brown made, which is that, yes, indeed, the government keeps coming back to the district court's emphasis not only on that criminal episode, but how it fits into Mr. Gomez's larger criminal history and immigration history. Because Mr. Gomez was here unlawfully when he committed those three offenses in 2011. He was sentenced to prison. He was sentenced to a 16-year term of probation. He was ordered removed. He was deported, only to return less than a year later. Of course the court was concerned about that and was well within sort of the bounds of deference to afford significant weight to that. I want to talk now about the hard limit. And those were the words that Mr. Brown used to describe the four-year term of imprisonment and the court's focus on that in its deterrence analysis and ultimately its analysis of the 3553A factors. The court was not unreasonably constricted or restricted. It wasn't a hard limit for the court. That is a stretch of the reading. Instead, the court used it as a material and a meaningful guidepost to see, well, look, after I just described what I did, the fact that he was here unlawfully, committed those horrifying offenses, sentenced to four years in prison, did a fraction of those four years, didn't do a day of probation, only then to commit a federal crime. The court was certainly concerned with that. And it did not impose a hard limit on itself. In furtherance of that argument, Mr. Gomez suggests that there were differences in context. Of course there's differences in context. Sexual battery, false imprisonment, burglary are clearly different than illegal reentry. But the connection, the connection is his unlawful presence in the United States, both when he performed those horrifying acts, to use the court's word, and when he returned less than a year later. Now, it is, I mean, I think you would admit it is a, I don't know, do you think this is an unusually large upward variance? Ninety-nine months, the guideline range is what, 15 to 21? That's right, Your Honor. Okay, so 99-month upward variance. I would agree with Your Honor that it is a large variance. Can you situate that within our cases that have affirmed large upward variances? Because I know we have. Yes, I will, Your Honor. So I will start with Hoffman. And Hoffman, Hoffman, the focus on Hoffman is almost exclusively on Peter Hoffman, who was the leader of the organization. And he was the one who had such a dramatic shift from 210 months at the top of the guidelines to a probationary sentence. But there were other defendants in that scheme, including Mr. Hoffman's wife. This court affirmed the variance in that case for Mr. Hoffman's wife, Susan Hoffman. This court was satisfied with the justifications provided by the district court in varying as much as the district court did. Ms. Hoffman's range was 46 to 57 months. This court affirmed a sentence of probation for Ms. Hoffman. And this court was satisfied with the lack of culpability. That's what was cited by the district court in varying as much. More on point, however, and Hoffman, this is not cited in my brief, nor is it cited in Mr. Brown's brief, but it is a case that is cited in Hoffman, and I will prepare a 28-J letter for it. It is United States v. Mejia Huerta. That's M-E-J-I-A H-U-E-R-T-A 480 Fed Third 713. There, this court affirmed a variance in an illegal reentry case. The guidelines were 21 to 27 months, and this court affirmed a sentence of 120 months. And so we are off maybe six months from the guidelines, so the guidelines here are 16 to 21. Guidelines there were 21 to 27, but this court affirmed a 120-month period. Well, do file a letter on that so that opposing counsel can respond. Certainly. Can you – when have we overturned – when have we said that an upward variance is too much, abusive discretion? Hoffman is – so I was focusing on Ms. Hoffman in Hoffman, but we can talk about Peter Hoffman where this court saw that it was a variance too far, I believe, is the language that was used. That was a downward variance, right? Yeah. In its briefing, the government does not disagree with Mr. Brown and Mr. Gomez that Hoffman provides important precedential value in terms of larger substantive reasonableness analysis. But where we start to depart is the facts, and the facts for Peter Hoffman are important. And I will get to your point, Your Honor, because in Hoffman, the district court's reason for varying as much as it did was the disparity between actual and intended loss. It also focused on Mr. Hoffman's health, the fact that his prior federal conviction was only a misdemeanor, and that the district court felt satisfied that it could properly deter future criminal conduct by a probationary sentence. This court was not satisfied with those reasons. That was a massive variance, both in terms of quantity and quality, 210 months at the top of the guidelines down to a five-year probationary sentence. And that's an example, Your Honor, where this case said, no, that's too far. And why this court thought that that was too far is not because this court engaged in a wholesale reweighing of the 3553A factors, but instead this court, when looking at the entirety of the record, thought, well, what about all this other stuff? What about the fact that he was the head of the scheme? What about the fact that he was an attorney and abused a position of trust? What about the fact that he perjured himself at trial? What about the fact that he's a recidivist? It was apparent from the record that the district court really didn't take into account those things, and this court found that that was not satisfactory and reversed on that conviction. I do want to bring up the unfortunate language that was used by the district court at the end of the record. Those comments were unfortunate and inartful, but I think that where they came in the record is important. The transcript of the record is about 40 pages. These stray comments came at the end after the court had already imposed the sentence and after it had already provided its reasons multiple times as to why it was varying the way that it did. What's clear from where we see those comments made in the context of the larger record is that they really had no effect on the court's 3553A analysis. They were inartful. They were unfortunate. I wish that the court had said them differently or maybe even not said them at all. But what's clear is that you have so many pages before that where the court made a well-reasoned, thoughtful analysis of the 3553A factors. With that, Your Honors, the district court was well within its discretion here, and I think what's perhaps the most important thing is that the district court had at its fingertips the police report, or at least a portion of that report. And so while, yes, there may be some differences in labeling in terms of rape versus sexual battery, I'm not saying that those are the same. I'm not saying that. But what I'm saying is the court was more focused on describing the conduct, describing the overall criminal episode. That's not error. With that, the district court was well within its discretion to sentence the way that it did. It provided sufficient justification. It did not ignore certain factors. It actually did a pretty well-reasoned analysis, a 40-page long transcript of a lengthy sentencing hearing. Did the record reflect, is there anything in the record about why he received 16 years of probation on a 20-year sentence in the Georgia crimes? There was some argument by trial counsel for Mr. Gomez that it was as a result of plea negotiations and that perhaps there was a tinge of, well, this guy is going to get deported, and so we'll give him four years in prison and then he will be released on 16 years of probation. Presumably we'll never see him again because he will be deported. There was argument by trial counsel for Mr. Gomez. Thank you. If there are no further questions, I will cede my time. Thank you. Thank you, counsel. Thank you. Mr. Brown. Thank you, Your Honor. Briefly on three points, Judge Duncan, you asked about opinions either affirming similar sentences and or reversing similar variances. I'd like to point out that the nature of the claim advanced on appeal is sort of defies bright-line rules. So there aren't going to be very many one-to-one comparisons, and I think the number is ultimately less important than the explanation. The explanation is going to provide contents for how the district court comes to that number, and with regard to both explanation and number, there's going to be a wide range of results that fall within what would be reasonable or rational to expect given 3553A, given the guidelines range, and given the facts before the court. Now, with regard to reversals for upward variances, there is by my count only one. It's a case called Garazano-Rosales. The site is 692 F3rd 393. It's an opinion that I chose not to address in the briefing. I'm happy to write a 28-J letter. But just briefly, it is such a bizarre fact pattern that it's really limited to its facts. There you have a judge in the Southern District of Texas who imposes a guideline sentence, 71 months, for an illegal entry defendant. The defendant says, no, I think that's too much time. The judge immediately says, you know what, you're being disrespectful. I'm going to give you 108 months. And this court said, look, you might have been warranted in finding that the defendant was being disrespectful, but given that you had just determined that based on all the same facts a 71-month sentence was reasonable, it makes no sense to jump up almost three years based on a few stray comments. But, again, I think that we can analogize the errors that we have here to Garazano-Rosales in that you have some misinterpretation of 3553A that becomes a tail that wags the dog that overwhelms everything else that was before the district court. I want to talk about the inartful language there on page 122 as well. So the inartful language is, in my mind, evidence of both of the errors I've alleged on appeal. The district court is not going to make those types of statements unless it has already unreasonably interpreted the evidence before it unreasonably interpreted 3553A. And I think there's evidence of similar statements, similarly unreasonable statements, perhaps not as offensive, but similarly unreasonable throughout the record, and on that I'd like to go to page 118 where the district court refers to the nonviolent misdemeanor sexual battery conviction as a violent felony. And this is where it ties that mischaracterization directly to its seriousness analysis. It said the defendant's behavior, both in his illegal reentries and his commission of a violent felony, show he clearly demonstrates a lack of respect for the American legal system and its justice and is a threat to all American citizens and those who are not citizens in this country. Now, the district court's decision later on to equate sexual battery with rape based on the facts does nothing to address the mischaracterization of a nonviolent misdemeanor as a violent felony. And, again, throughout this record you have language that is unreasonably inflated given the evidence before the court. I think that's all I have, Your Honors. I'm happy to write over Rule 28J on Guerra's honor misalice and respond to the government's on Moe Mahan. Counsel, is there any other legal error that the district court committed? You spent a lot of time arguing about her treatment of 3553A, which is understandable and there's a record there for us to look at. And I do understand the overall argument that it was an abuse of discretion to give so much time in jail. Is there any other legal error that you can cite us to that this district court made in this sentencing? I don't think there's any preserved legal error, Your Honor. I think that the inarticulate comments could be another version of substantive reasonableness error. The district court is not allowed under this court's substantive reasonableness authority to give significant weight to an irrelevant or improper factor. And I think those inarticulate comments injected caricature based on national origin into the record. Unfortunately, the objections did not go to that point. That's why I've decided – or that's why I think it's more appropriate for me to put that forth as evidence of the other two errors, not independent error because I think I'd have trouble showing plain error given the paucity of case law on these issues. Look, I mean, we don't hear many oral arguments in cases like this, to be frank. I mean, it's an unusual case, and both of you have done a very good job in presenting your arguments. So we appreciate it. Thank you, Your Honor. Thank you. While counsel packs up, we'll call the next case.